(Judge Voorhees of the Fifth Circuit, sitting in place of Judge Hale.)

AMERICAN CONTRACTING CO. V. WALTER SAMMON ET AL.

1. CONTRACTOR CANNOT ESCAPE LIABILITY FOR NEGLIGENCE OF INDEPENDENT CONTRACTOR, WHEN.

Where the work to be done is of such character that injurious consequences to an employe may be reasonably expected to result from its performance, unless proper care is observed, the person contracting to do such work cannot escape liability to an employe for injuries sustained from negligence in its performance, by showing that the work was left to and was done by an independent contractor.

2. MISCONDUCT OF COUNSEL PREJUDICIAL TO OWN CLIENT NOT REVERSIBLE ERROR IN FAVOR OF ADVERSE PARTY.

Improper conduct of counsel in his argument to the jury, which is calculated to prejudice the jury against his own client only, cannot be urged as reversible error by a codefendant.

3. COMMENT ON SMALLNESS OF DEFENDANT'S CAPITAL STOCK NOT PREJUDICIAL ERROR, WHEN.

A comment by plaintiff's counsel in his argument to the jury, in an action to recover damages resulting from personal injuries, to the effect that one of the defendant corporations had substantially no capital stock, cannot be said to be prejudicial error in the sense that it was calculated to aid in obtaining a verdict or enhance the amount of damages allowed.

4. EVIDENCE MUST BE PREJUDICIAL TO COMPLAINING PARTY TO CONSTITUTE REVERSIBLE ERROR.

A defendant cannot complain of the admission of evidence which is in no sense prejudicial to him, simply because it may be prejudicial to his codefendant.

5. REMITTITUR OF $3,000 FROM $5,000 VERDICT NOT CONCLUSIVE THAT VERDICT WAS OBTAINED BY INFLUENCE OF PASSION AND PREJUDICE.

The mere fact the trial court overruled defendant's motion for a new trial on condition that plaintiff would remit $3,000 from a $5,000 verdict, which was accordingly done, is not conclusive that the verdict of the jury was obtained by the influence of passion and prejudice.

ERROR to Cuyahoga common pleas court.

**Kline, Tolles & Goff,** for plaintiff in error.

**Kerruish, Chapman & Kerruish,** for defendant in error.

MARVIN, J.

Suit was brought in the court of common pleas by Walter Sammon against the King Bridge Company and the American Contracting Company, the petition alleging that the King Bridge Company was a corporation organized under the laws of the state of Ohio and engaged

very extensively in structural iron work of various kinds and entirely responsible pecuniarily; that the defendant, the American Contracting Company, was a corporation in name only; that, although organized as a corporation under the laws of Ohio, it had a capital stock of but $500; that such company was "a mere formal device instigated, inflated and manipulated by said The King Bridge Company for the purpose of discreetly subletting to it by the King Bridge Company in form of words, occasional contracts, when in the opinion of said The King Bridge Company, such subletting might be advisable, to avoid pecuniary responsibility to its employes for its negligent acts of omission and commission and for other like purposes; * * * being officered in form of words by the agents and servants of said The King Bridge Company, and is now and ever has been the creation in fact and mere tool of said The King Bridge Company, for the purposes above indicated, and for such purposes only."

The plaintiff further alleges in his petition that:

"At the time of the accident hereinafter mentioned he was unaware of the existing relations above stated between said defendants, and that though in form of words he was nominally in the employ of said The American Contracting Company, as he now learns, he avers and charges the fact to be, that he was actually doing the work and in the employ of said The King Bridge Company."

Further, the petition alleges that on or about November 30, 1901, the plaintiff, while so engaged in the nominal employment of the American Contracting Company but in the actual employment of the King Bridge Company, he was required as a part of his duty to climb an iron column to a height of some forty feet above the surface of the ground, and that arriving so that his head was at the top of said column, for the purpose of raising himself he reached with his hand and grasped an iron plate, which should have been firmly bolted to such column but which in fact was not so bolted, and by reason thereof it slipped from the top of the column and was precipitated with him to the ground whereby he received great injuries and for which he brought his suit. The petition alleges that the injuries which he sustained were caused wholly by the negligence of the defendants and were in no wise contributed to by any fault or negligence on his part.

At the close of the evidence on the part of the plaintiff the court, on motion of the King Bridge Company, arrested the evidence from the jury as to that defendant and entered a judgment in its favor and the case proceeded against the American Contracting Company, re-

Contracting Co. v. Sammon.

sulting in a verdict and judgment against said last named company; to reverse which the present proceeding is brought.

Objection was made at the trial on the part of the King Bridge Company to the introduction of any evidence against it under the petition. This objection was overruled and a proper exception taken. The only bearing that this ruling has to the case as it now stands here is as to whether evidence was not permitted against the bridge company which was prejudicial to the construction company.

We think it clear that under the petition evidence was admissible as against the King Bridge Company.

It was urged in argument to us that the petition shows that the contracting company was a duly organized corporation and that the plaintiff was, nominally at least, in the employ of that corporation, but what has already been quoted from the petition shows that it was distinctly averred in the petition that the plaintiff was an employe of the bridge company and that the intervention of the contracting company was a mere subterfuge, and that it was organized as a creature of the bridge company, and the only purpose of its organization was that the bridge company might be relieved from pecuniary liability to any employe injured in performing the work which was really to be done by the bridge company but which was nominally being done by the contracting company.

It is settled that one who contracts to have work done cannot always be relieved from liability for injuries received by an employe in some department of the work by having an independent contractor intervene between the principal contractor and the employe who receives the injury.

In *Covington & C. Bridge Co.* v. *Steinbrock,* 61 Ohio St. 215 [55 N. E. Rep. 618; 76 Am. St. Rep. 375], the first clause of the syllabus reads:

"Where danger to others is likely to attend the doing of certain work, unless care is observed, the person having it to do, is under a duty to see that it is done with reasonable care, and cannot, by the employment of an independent contractor, relieve himself from liability for injuries resulting to others from the negligence of the contractor or his servants."

And in the opinion in the same case, page 222, Judge Minshall uses this language:

"The doctrine of independent contractor, whereby one who lets work to be done by another, reserving no control over the performance of the work, is not liable to third persons for injuries resulting from

Cuyahoga County.

negligence of the contractor or his servants, is subject to several exceptions. One of these * * * is where the employer is, from the nature and character of the work, under a duty to others to see that it is carefully performed."

And this quotation is made with approval from Cockburn, C. J., in *Bower* v. *Peate,* 1 L. R. Q. B. Div. 321:

" 'A man who orders work to be executed, from which, in the natural course of things, injurious consequences to his neighbor must be expected to arise, unless means are adopted by which such consequences may be averted, is bound to see to the doing of that which is necessary to prevent mischief.' "

Again, on page 223, Judge Minshall says:

"The weight of reason and authority is to the effect that, where a party is under a duty to the public, or a third person, to see that work he is about to do, or have done, is carefully performed so as to avoid injury to others, he cannot by letting it to a contractor, avoid his liability, in case it is negligently done to the injury of another."

We think it clear that, if the allegations of the petition as to the relations between the bridge company and the contracting company had been sustained by the evidence the bridge company could not have escaped liability by reason of the contracting company being an independent contractor, and so there was no error in allowing proper evidence to be introduced against the bridge company.

It is said, however, on the part of the plaintiff in error that even if any evidence were admissible against the bridge company, certain evidence was permitted to go to the jury which was incompetent as against either company and which was prejudicial to the contracting company, though introduced primarily as against the bridge company. The bill of exceptions does not purport to contain all of the evidence offered but only certain parts of such evidence upon rulings in regard to which complaint is made. The rulings upon evidence especially complained of are, where the court permitted questions to be answered which were asked by counsel for the plaintiff below and the purpose of which manifestly was to belittle and make insignificant the contracting company. A specimen of such is found beginning on page 4 of the bill of exceptions. The witness called by the plaintiff was Harley B. Gibbs, treasurer of the King Bridge Company, and the following questions and answers appear in the bill, the questions being asked by counsel for the plaintiff below:

Q. "The King Bridge Company is a company that has existed

here a long time and has done an extensive business all over the United States?

A. "Since 1871.

Q. "And is reputed to be, and is in fact, a great financial responsibility?

A. "Why, yes, none better that I know of.

Q. "The President, James A. King, is in bad health, is he not?

A. "Yes, he has been incapacitated for work for some time.

Q. "Who was the secretary of the King Bridge Company in 1901?

A. "Norman C. King. I don't remember in what year he was elected.

Q. "Is he a grandson, or a son?

A. "He is a grandson of Zenas King.

Q. "It is largely a King concern—was originally. It is capitalized for how much?"

To this last question objection was made, and the court overruled the objection but before any answer was given the following question was asked:

Q. "What is the capital stock of the company?"

To this objection was made by the Bridge Company; it was overruled, and the answer is:

A. "$600,000."

The court in ruling upon the admissibility of this evidence stated that the question of the financial responsibility of the bridge company had nothing to do with the recovery and that this was admitted solely with reference to the allegation of the petition as to the connection between the companies. Whether it was admissible for any purpose it is not necessary to determine here. It is certain that if any error was committed in the admission of this evidence it was not to the prejudice of the contracting company but only to the prejudice of the bridge company, against whom no judgment was recovered.

Again, on page 7, the question was asked by counsel for the plaintiff below:

Q. "About how many employes in 1901 did the King Bridge Company have?

A. "At the works?

Q. "Yes, from bosses and contractors and so on, from top to bottom?"

This last question was objected to and the objection overruled.

A. "We must have had four or five hundred."

Cuyahoga County.

Later on in the examination of the same witness this question was asked by counsel for plaintiff:

Q. "I will inquire of you if you know about the financial size of the contract that the King Bridge Company made with this American Contracting Company, what it signified in dollars and cents?"

This was objected to, overruled and witness answered:

A. "I can't tell without referring to the contract."

The contract was handed to the witness and the questioning continued and the witness still was unable to give the amount of the contract in dollars and cents.

Then this question was asked:

Q. "Didn't you know all the time that the American Contracting Company, as a financial institution, wasn't worth one cent?"

This was objected to, the objection overruled, and the witness answered:

A. "No, I didn't know that."

Then the counsel for plaintiff asked the witness if the contracting company had any offices, and any materials or any devices for carrying on the work, etc., and finally this was asked:

Q. "Isn't this the truth about the matter, that that was not only for the purpose of avoiding detail" (the witness having said that one purpose for the letting to the contracting company was to avoid detail) "but it was for the purpose of getting the responsibility for poor fellows that happened to get hurt, thrown off on a $500 corporation that wasn't worth anything, and to relieve yourself of it?"

Objection was made to this and overruled, and a good many other questions substantially of the same sort were asked and permitted to be answered, the purpose clearly being to impress upon the jury that the contracting company was an insignificant affair and really had no existence independent of the bridge company.

The plaintiff also called H. W. King, who was the vice president of the bridge company and was president of the contracting company, and he was inquired of as to the contract made between the bridge company and the contracting company for the work on which the plaintiff below was engaged at the time of his injuries, and among other things, this was asked of him:

Q. "Isn't this the object and purpose of the organization of this company, not for the purpose of making dividends or making money, but simply to have another institution which may have a legal existence, so that in case an accident happens like this it shall be said the man

Contracting Co. v. Sammon.

was working for the contracting company and not for the King Bridge
Company?"

Witness was permitted to answer, and did answer, "I think not."
And then this question was asked:

Q. "Now I will ask you again, if it is not the fact that was a
mere contrivance made, not intended to make money, never has made
money, not organized by those who wanted to make money, but just as
a mere convenience for the King Bridge Company? Isn't that the
whole of it, all of it, nothing else but it?" (Speaking of the contracting
company.)

A. "No."

If it be conceded that this evidence was not admissible as to the
bridge company, though upon that we express no opinion, it seems
clear that it could not have been to the prejudice of the contracting com-
pany. The tendency would seem to be, if the questions had been an-
swered in the affirmative instead of the negative, rather to relieve the
contracting company from responsibility and place it all upon the
bridge company.

The testimony of but one witness offered by the defendant appears
in the bill. The cross-examination of this witness is set out, from which
it appears that every objection to questions asked of him in such cross-
examination by counsel for the plaintiff was sustained by the court.

We hold that there was no erroneous ruling by the court upon
the admission of evidence which was prejudicial to the contracting com-
pany.

Complaint is made, however, of the conduct of counsel for the
plaintiff below in his argument to the jury. It appears that in the
argument plaintiff's counsel spoke of the contracting company as a
"scapegoat." Objection was made to this remark at the time, which
was sustained by the court. The first remark made by counsel to which
objection was not sustained, so far as is shown by the bill, is in these
words:

"We are here, then, dealing with the American Contracting Com-
pany. Am I justified in saying that the capital stock of the American
Contracting Company is but $500?"

An objection was made to this, and overruled. The statement was
sustained by the facts, and, indeed, appears in the pleadings, but it,
of course, was not a fact which could aid in any way in determining
whether the plaintiff was entitled to a verdict, and if so, what the
amount of such verdict should be, but how it was calculated to prejudice
the contracting company we are unable to see. Usually there is complaint

where an effort is made to show that the defendant in a case like this is wealthy, as tending to enhance the. verdict which may be rendered against it. How it could tend to enhance a verdict or to aid in obtaining a verdict against the company to show that it 'had substantially no capital stock we are unable to see, and we think there was no prejudice to the contracting company in the remark made. Counsel then said:

"Am I justified in saying that the American Contracting Company appears never to have made a dollar?"

Objection was made to this and sustained, and the court said:

"I wish to say now for the last time that I will not permit this kind of discussion in this case."

Counsel then said:

"If your Honor please, I hardly know what to say."

And the court said:

"Anything you choose to say in this case which is proper, and you know what is proper, you may say without exception, but these matters 'have been taken out of the case and are not open to discussion."

Counsel then said:

"May I say this, then, that if it should chance in your judgment that a judgment should be rendered in your opinion here sitting as jurors, that a 'judgment should be rendered in this case larger than the amount that this company is apparently able to pay, that you ought not, therefore, to be stingy about that judgment but that you should give that judgment as you think just, and," (turning to the court) "Is that right?"

The court, we think very properly, answered:

"Turning to the court with that inquiry and making that statement is not right, and I will not permit it. Address yourself to the jury, and go on with the case."

Counsel then said: "At the same time, I want to go on with the good offices and the kindness and the friendship of the court," to which the court answered, "You have the friendship of the court, but you must proceed in order."

Nothing more is shown by the bill as to the conduct of counsel in the argument of the case. We think the trial court pursued the proper course in the matter, and that nothing said by counsel for the plaintiff, taken in connection with what the court said to him in the presence of the jury, could have prejudiced the jury in his favor. We think it was rather calculated to prejudice the jury against him.

At the conclusion of the argument the court charged the jury.

Contracting Co. v. Sammon.

As shown by the bill, the charge was concluded at twenty minutes before 12 o'clock, the hour for the noon adjournment. The jury thereupon retired to the jury room, reached a verdict and reported to the court about 1 o'clock, the conclusion of the noon adjournment, at which time the verdict of the jury was returned in favor of the plaintiff in the sum of $5,000.

A motion was made by the contracting company for a new trial, and upon the hearing of that motion the plaintiff remitted from the amount of the verdict the sum of $3,000, whereupon the motion was overruled and judgment was entered for the plaintiff for $2,000.

It is urged that the fact, that the jury in so short a time rendered a verdict for an amount so much greater than the amount of the judgment entered by the court, establishes that the verdict was obtained by the influence of passion or prejudice, and that therefore there was error on the part of the court in overruling the motion for a new trial, which was not cured by the *remittitur*. The only evidence we have that the verdict was excessive is this *remittitur*, because the evidence given to the jury is not all before us. It is not certain that the court would have sustained the motion for a new trial but for this *remittitur*.

In the case of *Pendelton St. Ry.* v. *Rahmann*, 22 Ohio St. 446, the syllabus reads:

"Where the damages assessed by a jury are excessive, but not in a degree to necessarily imply the influence of passion or prejudice in their finding, the court, in the exercise of a sound discretion, may make the *remittitur* of the excess the condition of refusing to grant a new trial."

In the opinion, the court recites the causes for which, under the statute, a new trial shall be allowed, among which causes appear the following: "'Excessive damages appearing to have been given under the influence of passion or prejudice.'" This is the exact language of our present statute. Laning R. L. 8821 (R. S. 5305).

In the case then under consideration the jury had returned a verdict for $10,000, and upon motion for a new trial the court entered the following order:

"The court, being fully advised in the premises, overruled said motion on condition of the plaintiff remitting $5,000 on the amount of the verdict, and the plaintiff consenting thereto, it is ordered and adjudged by the court that the plaintiff recover of the defendant his damages assessed at $5,000," etc.

The entry in the present case is in these words:

"The motion of the American Contracting Company for a new trial of this cause is heard, whereupon the plaintiff remits from the amount of

Cuyahoga County.

the verdict of the jury the sum of $3,000, and said motion is refused,''
etc.

It will be observed that in the case referred to the court made it a
condition of the overruling of the motion that the plaintiff remit $5,000
from a verdict of $10,000. In the present case, it does not appear from
the language of the entry of the court that the remitting of $3,000 from
the verdict was a condition of the overruling of the motion for a new
trial, yet perhaps it is fair to assume that such was the case, and this
would make the two cases almost exactly parallel. The *remittitur* in
the case referred to was for a larger ᴜmount than in the case before
us; the percentage, however, was not so great, but practically the cases
are alike, and in the opinion in the case in *Pendleton St. Ry.* v. *Rah-
mann, supra,* this language is used (page 450), and seems to be entirely
applicable to the case at bar:

''The presence of the conditions, necessary to bring the case at bar
clearly within the operation and peremptory rule of the statute, is not
disclosed in the record. The amount of the verdict is not such that the
influence of passion or prejudice is inferable from its magnitude. It
is not deducible from the facts spread upon the record. It is not shown
by the finding of the court. We are not put in possession of any circum-
stances imposing the statutory obligation to vacate.

''It is probable, as is often the case, that in the opinion of the
judge, who heard the cause, the verdict was larger than he would have
given as a juror, but not such as, in the absence of statutory infirmities,
excluded his discretionary power to confirm or vacate it. We cannot
presume the existence of such infirmities, for it is not competent to
presume a state of facts repugnant to the judgment of the court.

''So far as appears, then, the entering of a judgment upon the
verdict for its entire amount, would not have been disturbed by this
court. But, with the consent of the plaintiff, judgment was entered for
a smaller sum. If this had been done arbitrarily, without his assent, it
might have been ground of exception and reversal at his instance.
But can the defendant object? The only consequence to him is the
substitution of a less for a larger sum, which might have been legally
exacted, and cannot be held to prejudicially affect him.

''It may be supposed that a reasonable doubt existed in the mind
of the court in regard to the vacation and awarding of a new trial.
In the exercise of a sound discretion, with which courts are necessarily
clothed, the question presented by the motion might have been de-
termined either way, without constituting ground of exception. Where-
fore it results, that as confirmation of the entire verdict could not have

Contracting Co. v. Sammon.

been made available ground of error by the defendant, judgment for a part thereof instead of the whole, the residue being relinquished, cannot.''

We reach the conclusion, therefore, that there is no error apparent upon the record in the action of the court in overruling the motion for a new trial, and no error in any of the proceedings of the court shown by the record which would justify a reversal of the judgment of the court of common pleas, and such judgment is affirmed.

**Winch** and **Voorhees, JJ.**, concur.